## In re Probate of Will of Mary Schmanda, Deceased.

## John Schmanda, Proponent, Appellant, v. Mary Schmanda, Contestant, Appellee.

Wills, § 94*—*when execution of will fraudulently obtained.* The evidence *held* to show such fraud and improper conduct on the part of the proponent to justify the denial of the probate of a will, where it appeared that a friend of the proponent, who was but slightly acquainted with the testatrix, a Polish woman who did not speak English, examined a former will and informed her that it was not good but that the person who drew it had played a trick on her, acted as interpreter for an attorney who did not understand Polish, who was employed by the proponent to prepare a will under which the latter was the principal beneficiary.

Appeal from the Circuit Court of Vermilion county; the Hon. William B. Scholfield, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed April 16, 1915.

O. D. Mann and Morris Loeff, for appellant; E. M. Seymour, of counsel.

A. B. Dennis and W. O. Edwards, for appellee.

Mr. Justice Thompson delivered the opinion of the court.

An instrument in writing dated February 3, 1914, purporting to be the last will and testament of Mary Schmanda, deceased, was filed in the County Court of Vermilion county, with a petition for its probate, and upon the proof offered probate was refused. From that order an appeal was prosecuted to the Circuit Court, where upon a hearing probate of the will was refused. John Schmanda, the proponent, prosecutes this further appeal.

The evidence shows that Mary Schmanda was a widow, a Polish woman who did not speak English. She resided in Westville in Vermilion county and had

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

an adopted daughter, Mary Schmanda, about twelve years of age, who is the party contesting the probate of the will.

John Schmanda, the proponent and sole legatee under the will, is a brother of the deceased husband of testatrix and resides in Chicago, where he is in the employ of Swift & Company. On February 3, 1914, and for some time prior thereto, the testatrix was seriously ill and confined to her bed. At that date the testatrix was living with Frank Suzn and his wife in a house where her husband had died, and which the testatrix about the date of her husband's death had deeded to Frank Suzn under an agreement that the Suzns should care for testatrix during her natural life.

On Sunday, February 1, 1914, the proponent, John Schmanda, left Chicago and went to Westville for the purpose of having the testatrix execute a will. Before leaving Chicago he made an arrangement with Simon K. Obrzut, a Polish interpreter and real estate agent in Chicago, to go to Westville to assist in the making of the proposed will. Obrzut had an engagement in Chicago for Monday and went to Westville to the home of the testatrix on Tuesday. The only acquaintance Obrzut had with the testatrix was that he had met her once in Danville some eight months before that time, when he had gone there to execute a bond for a friend of Schmanda who was in jail charged with bastardy. On arriving at the home of the testatrix, Obrzut inquired of her if she had a will and she told him she had. He said, "Let me see it." She replied, "All right," and showed it to him. After seeing the writing shown him by Mrs. Schmanda, Obrzut "told her it was no will," that it "wasn't any good" and was only a receipt for money, and that one Otto Newman, who had prepared the writing shown him, "had been playing some kind of a trick on her." That same afternoon the proponent with Obrzut and John Majorsik, a Polish man who lived in Kellyville and with whom

Mrs. Schmanda had not been on good terms for some time, went to Danville, where the proponent employed Mr. Brittingham, an attorney, to go to Westville and draw a will for Mrs. Schmanda.

Mr. Brittingham, who is an American and does not talk Polish, accompanied by the proponent, Obrzut and Majorsik, went to Westville, where Mr. Brittingham prepared the instrument in controversy. Obrzut was the means of communication between the testatrix and the scrivener. He translated, in the presence of the beneficiary and others, from English to Polish the questions asked by the scrivener, and from Polish to English the replies and statements made by the testatrix.

The will is witnessed by Obrzut and Majorsik, both of whom speak Polish, and by Brittingham and Mr. Hamilton, neither of whom speak or understand Polish.

There is a clause in the will: ''The above devise is made upon condition that John Schmanda care for me during my natural life, * * *.'' Although the testatrix already had conveyed her home to Suzn upon a promise of Suzn to care for her. The legatee was present when the will was drawn and executed. This clause tends to show that there was some influence brought to bear on the testatrix to execute the will in proponent's favor.

Each of the four attesting witnesses testified that the testatrix was of sound mind and memory, and that the testatrix signed the will in their presence and acknowledged it to be her will. It is very apparent that the English speaking witnesses could know but little about such matters from their own knowledge, and that they relied for their knowledge on the information obtained through the Polish interpreter. The proponent made the proof necessary to require the will to be admitted to probate, ''provided that no proof of fraud, compulsion or other improper conduct be exhibited, which in

the opinion of said County Court shall be deemed sufficient to invalidate or destroy the same."

The undisputed facts—that the sole beneficiary, before seeing the testatrix, made an arrangement in Chicago with his friend Obrzut, who was comparatively a stranger to testatrix and who was, as Obrzut himself states, unable to draw a will, to go all the way from Chicago to Vermilion county to look after the making of a will for the testatrix to be prepared by some other person; that Obrzut immediately on reaching Westville inquired of the testatrix if she had made a will, and on learning she had, then asked to see it and told her that the paper shown him was not a will and that the party who drew it was playing a trick on her; that Obrzut with the other Polish attesting witness, who was not a friend of the testatrix, with the beneficiary went to Danville to employ a lawyer to draw the will, and that the Chicago witness and friend of the sole beneficiary did all the talking and interpreting between the scrivener and the testatrix—constitute such proof of fraud and improper conduct on the part of the proponent that the trial court was justified in refusing to admit the will to probate.

No question except the refusal of the court to admit the will to probate on the evidence properly in the record is argued or presented for review. The judgment of the Circuit Court is affirmed.

*Affirmed.*